**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JAMES R. SMITH,                       :
                                      :   Civil Action No. 09-2602 (PGS)
              Plaintiff,              :
                                      :
                                      :
          v.                          :   **OPINION**
                                      :
GEORGE W. HAYMAN, et al.,             :
                                      :
              Defendants.             :

**APPEARANCES:**

        JAMES R. SMITH, Plaintiff pro se
        423443
        New Jersey State Prison
        P.O. Box 861
        Trenton, New Jersey, 08625-0861

        CRAIG J. SMITH, ESQ.
        MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
        1617 John F. Kennedy Blvd., Suite 1500
        6981 North Park Drive
        Philadelphia, PA 19103-1815
        Counsel for Defendants, Dr. Flora DeFilippo, Dr. Marina
             Moshkovich, and Ms. Keasha Baldwin

        EMILY ANNE SAMUELS, ESQ.
        OFFICE OF THE N.J. ATTORNEY GENERAL
        DIVISION OF LAW
        R.J. Hughes Justice Complex
        25 Market Street, P.O. Box 112
        Trenton, New Jersey 08625
        Counsel for Michelle Ricci

**SHERIDAN**, District Judge

        THIS MATTER comes before the Court on the motion of

defendant, Dr. Flora DeFilippo, for judgment on the pleadings,

pursuant to Fed.R.Civ.P. 12(c).  (Docket entry no. 68).

Plaintiff filed an opposition to defendant's motion.  (Docket
entry no. 70).  This matter is being considered on the papers
pursuant to Fed.R.Civ.P. 78.  For the reasons set forth below,
defendant's motion will be granted.

## I.   BACKGROUND

On or about May 29, 2009, plaintiff, James R. Smith
("Smith"), filed a civil rights Complaint, pursuant to 42 U.S.C.
§ 1983, against numerous defendants: George W. Hayman, Commission
of the New Jersey Department of Corrections ("NJDOC"); Michelle
Ricci, Administrator of the New Jersey State Prison ("NJSP"); Dr.
Rusty Reeves; Dr. Jordan Lieberman; Dr. Flora DeFilippo; Dr. Ray
Baum; Dr. Marina Moshkovich; Ms. Keasha Baldwin, Clinical Social
Worker; and John/Jane Doe defendants #1-20.   (Complaint,
Caption, ¶¶ 15-23).  The Complaint asserted claims of
retaliation, failure to protect, infringement of his right to
privacy, denial of medical care and treatment, and denial of
equal protection.  In an Opinion and Order entered on February
19, 2010, the Honorable Freda L. Wolfson, U.S.D.J., dismissed
plaintiff's claims asserting denial of medical care and equal
protection, but allowed the remaining three claims to proceed.
(Docket entry nos. 4 and 5).  On June 30, 2010, defendant Hayman
was dismissed from this action.  (Docket entry no. 28).  By
letter Order entered on February 17, 2011, defendants Reeves,
Lieberman and Baum were voluntarily dismissed from this action.

(Docket entry no. 61).  The remaining defendants are Administrator Ricci, Dr. DeFilippo, Dr. Moshkovich and Keasha Baldwin.

In his Complaint, Smith alleged that he suffers from a Gender-Identity Disorder ("GID").  He claimed that he is a male-to-female transgender individual, born biologically male but allegedly psychologically and emotionally female.  In dismissing the denial of medical care claim, Judge Wolfson found that Smith failed to cite an actual medical or psychiatric/psychological diagnosis.  In fact, the prison psychiatrist, defendant Dr. Baum, stated in a report that plaintiff did not meet the two major criteria for a diagnosis of GID.  Smith had been evaluated by psychiatrists, psychologists and social workers at the New Jersey Department of Corrections ("NJDOC").  There was no recommendation for hormone treatment or surgery, nor was there any confirming diagnosis of GID.  Further, Smith was not undergoing hormone therapy or other type of treatment for GID that was disrupted by defendants.  He did not arrive in the prison system having started hormone therapy or other treatment for GID.  Indeed, he failed to cite any previous medical/psychological diagnosis of GID.  Smith also admitted that defendants offered counseling and alternative treatments to address his transgender concerns, which he has refused for alleged privacy concerns, although he also admitted that the doctors and counselors made efforts to ensure

3

private sessions within the confines of his unit.  Smith further admitted that defendants have suggested medications to reduce his alleged desires to be female, which Smith also has declined. Accordingly, Judge Wolfson dismissed the denial of medical care claim because there was no demonstrated deliberate indifference to deny treatment for GID where no prior therapy was alleged, citing Wolfe v. Horn, 130 F. Supp.2d 648, 652 (E.D. Pa. 2001).

Shortly thereafter, Smith filed a motion for a preliminary injunction to enjoin defendants, Dr. Moshkovich and others from deleting medical health diagnoses from his electronic medical record ("EMR") and to have the Court impose sanctions against defendant for deleting a medical diagnosis from his EMR in violation of law.  (Docket entry no. 35).  In particular, Smith attached a March 4, 2010 EMR and a July 29, 2010 EMR, noting that several entries on the March EMR were not included on the July EMR, namely, hx (history) of post traumatic stress disorder; major depressive disorder, recur, full remis; hx of polysubstance dependence; dysthymic disorder; paraphilia (arousal to forcible sex); and "? of gender identity disorder."  (Id., Motion at Exhibit 3).

In an Opinion and Order filed on February 23, 2011, Judge Wolfson denied Smith's motion for a preliminary injunction because it failed to satisfy the first two factors necessary for issuance of preliminary injunctive relief.  (Docket entry nos. 62

and 63).  Namely, the Court found that Smith could not
demonstrate a likelihood of success on the merits.  In
particular, the Court found no actual deletions of a reference to
GID because no diagnosis of GID has ever been made with respect
to plaintiff.  Moreover, the "deletions" alleged by Smith were
not actual deletions of medical information from Smith's medical
records.  Rather, the March 2010 EMR references current problems
existing at that time that were not existing current problems in
July 2010.  Further, none of those current problems in the March
2010 pertained to any diagnosis.  Thus, the Court concluded that
Smith had little to no likelihood of success on this claim, as he
could not show any merit to his accusation that information in
his medical records were deleted or destroyed, or that the
information concerning his "current problems" in March 2010 are
unavailable for purposes of obtaining evidence pertinent to his
pending case.  Indeed, both EMRs, made part of the record by
plaintiff, plainly demonstrated that diagnosis information in
Smith's medical records had not been deleted.  Finally, the Court
noted that there was no evidence to show that defendants, in
particular, Dr. Moshkovich, did anything in violation of the law
or of plaintiff's constitutional rights that would warrant
injunctive relief.  Namely, plaintiff provided no evidence of any
kind that information in his medical records were deleted by Dr.

Moshkovich or others.  (February 23, 2011 Opinion, Docket entry
no. 62 at pp. 5-6).

     The Court also found that Smith failed to support a claim of
irreparable harm based on the fact that there was no indication
that Smith's medical records had been compromised in any way by
defendants or that the medical records needed to prove his case
were no longer available.  The Court observed that Smith had
undermined his own argument by producing medical records which
clearly showed that no medical diagnoses have been deleted, as
alleged.  Instead, the EMRs simply referenced the list of current
problems existing in March 2010 that were not existing as current
problems in July 2010.  Thus, the Court concluded that there was
no indication that Smith's future treatment would be imperiled
because no diagnoses have been deleted from Smith's medical
records.  (Id. at pp. 6-7).

     On March 11, 2011, counsel for defendant Dr. DeFilippo filed
a motion for judgment on the pleadings.  (Docket entry no. 68).
In the motion, counsel states that the Complaint sues DeFilippo
in her official capacity for declaratory and prospective
injunctive relief in that she "failed in her capacity to take a
course of action when the plaintiff sent her a letter dated
January 21, 2008 regarding his Gender-Identity Disorder."
(Certification of Craig J. Smith at ¶ 3 and Complaint at ¶ 19).
Counsel notes that the letter referenced by plaintiff was

actually dated January 4, 2008, and the January 4, 2008 letter was referenced by plaintiff in ¶ 29 of the Complaint, wherein plaintiff sates that he attached the letter to a February 13, 2008 Inmate Remedy Form ("IRF") filed with the NJSP as a grievance seeking treatment for GID.  Paragraphs 84 and 86 of the Complaint also reference the January 4, 2008 letter.  Smith authenticated the January 4, 2008 letter as the letter he attached to his February 13, 2008 IRF in his response to request no. 20 of defendants' requests for admission.  The authenticity of the letter is not disputed by any of the parties to this action.  (Smith Cert., ¶¶ 5-7, 10-11).  The January 4, 2008 letter seeking treatment for GID and Smith's allegation that DeFilippo failed to respond to that letter comprise the sole basis for plaintiff's claim against DeFilippo.  (Id., ¶¶ 8-9).

In seeking judgment on the pleadings as to DeFilippo, counsel argues that there is no allegation in the Complaint that establishes personal, supervisory, policy, practice or agency involvement attributable to defendant regarding any claim remaining in this action.  Further, counsel argues that there is no allegation in the Complaint that establishes that DeFilippo exercised state power to deprive Smith of any constitutional right.  Because the only allegation against DeFilippo is that she failed to consent to Smith's demands for female clothing and hormone treatments for GID, and the Court has dismissed all

7

related claims on this issue, and because the allegations against DeFilippo do not bear on plaintiff's remaining claims asserting breach of privacy, retaliation and failure to protect, counsel contends that judgment on the pleadings should be granted dismissing DeFilippo from this action.  (Defendant's Brief in Support of Motion, Docket entry no. 68-3 at pp. 11-14).

On March 22, 2011, Smith filed an opposition to DeFilippo's motion for judgment on the pleadings.  (Docket entry no. 70). Smith first argues that "[s]everal documents emerged during the discovery process that the Plaintiff's Confidentiality were clearly breached and that there were several concerns about conducting mental health interviews on the main floor of the housing unit due to confidentiality issues.  These documents were all by Defendant, Dr. DeFilippo to Defendant, Michelle Ricci, and one document addressed to Mr. James Drumm, then Assistant Superintendent."  (Id. at § I, pg. 2).  Smith alleges that he could not provide the Court with copies of these documents due to the time constraint in responding to the motion, but identifies the documents as Bates nos. UMDNJ-000002-000004 AND UMDNJ-000007. (Id. at pg. 3).

Smith also argues that DeFilippo is an agent and/or employee of the NJDOC by virtue of her employment with the University of Medicine and Dentistry of New Jersey ("UMDNJ"), which has a

8

contract with the NJDOC to provide mental health services to NJDOC inmates.  (<u>Id</u>. at § II, pp. 3-4).

Finally, Smith disputes the contention that no actual diagnosis of GID was made as to plaintiff and that his claim against DeFilippo is frivolous.  Plaintiff does not provide factual support for this bald legal assertion.  (<u>Id</u>., §§ III and IV).

On March 28, 2011, counsel for DeFilippo filed a reply in support of the motion for judgment on the pleadings.  (Docket entry no. 71).  Principally, counsel argues that plaintiff's reference to documents outside the pleadings is improper, but more significantly, the documents are evidence that neither DeFilippo or the UMDNJ followed, condoned or acquiesced to any policy to deprive Smith of his privacy.  (<u>Id</u>.).

## II.  <u>DISCUSSION</u>

### A.  <u>Standard on Motion for Judgment on the Pleadings</u>

Federal Rule of Civil Procedure 12(c) permits a party to "move for judgment on the pleadings."  "The standard for deciding a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is identical to that under Rule 12(b)(6)."  <u>Celgene Corp. v. Teva Pharms. USA, Inc.</u>, 412 F. Supp.2d 439, 443 (D.N.J. 2006).

On a motion to dismiss for failure to state a claim pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6), the Court is required to accept as true

all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  See, e.g., Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  Iqbal, 129 S.Ct. at 1950.  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000), cert. denied, Forbes v. Semerenko, 531 U.S. 1149 (2001).

In Iqbal, the Supreme Court revised the standard for summary dismissal of a Complaint that fails to state a claim.  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Twombly,
for the proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting
Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

>First, the factual and legal elements of a claim should be
>separated.  The District Court must accept all of the
>complaint's well-pleaded facts as true, but may disregard
>any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
>Second, a District Court must then determine whether the
>facts alleged in the complaint are sufficient to show that
>the plaintiff has a "plausible claim for relief." [Id.]  In
>other words, a complaint must do more than allege the
>plaintiff's entitlement to relief.  A complaint has to
>"show" such an entitlement with its facts.  See Phillips,
>515 F.3d at 234-35.  As the Supreme Court instructed in
>Iqbal, "[w]here the well-pleaded facts do not permit the
>court to infer more than the mere possibility of misconduct,
>the complaint has alleged-but it has not 'show [n]'-'that
>the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at
>1949-50].  This "plausibility" determination will be "a
>context-specific task that requires the reviewing court to
>draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

Thus, for a complaint to survive dismissal under Rule

12(b)(6), it "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face.'"  Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at

570).  In determining the sufficiency of a complaint, the Court

must accept all well-pleaded factual allegations in the complaint

as true and draw all reasonable inferences in favor of the non-

moving party.  See Phillips v. County of Allegheny, 515 F.3d 224,

234 (3d Cir. 2008).  But, "the tenet that a court must accept as

true all of the allegations contained in a complaint is

inapplicable to legal conclusions [;][t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Iqbal, 129 S.Ct. at 1949.

Additionally, in evaluating a plaintiff's claims, generally "a

court looks only to the facts alleged in the complaint and its

attachments without reference to other parts of the record."
Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261
(3d Cir. 1994).

In this case, in response to defendant's motion, Smith made
reference to matters outside the pleadings.  Under Fed.R.Civ.P.
12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56.  All parties must be given a reasonable
opportunity to present all the material that is pertinent to the
motion."

Summary judgment is appropriate under Fed.R.Civ.P. 56(c)
when the moving party demonstrates that there is no genuine issue
of material fact and the evidence establishes the moving party's
entitlement to judgment as a matter of law.  Celotex Corp. v.
Catrett, 477 U.S. 317, 322-23 (1986).  A factual dispute is
genuine if a reasonable jury could return a verdict for the non-
movant, and it is material if, under the substantive law, it
would affect the outcome of the suit.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for
summary judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence;
instead, the non-moving party's evidence 'is to be believed and
all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(quoting Anderson, 477 U.S. at 255).

    Once the moving party has satisfied its initial burden, the
party opposing the motion must establish that a genuine issue as
to a material fact exists.  Jersey Cent. Power & Light Co. v.
Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The party
opposing the motion for summary judgment cannot rest on mere
allegations and instead must present actual evidence that creates
a genuine issue as to a material fact for trial.  Anderson, 477
U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54
F.3d 1125, 1130-31 (3d Cir.1995).  "[U]nsupported allegations ...
and pleadings are insufficient to repel summary judgment."
Schoch v. First Fidelity Bancorp., 912 F.2d 654, 657 (3d Cir.
1990); see also Fed.R.Civ.P. 56(e)(requiring nonmoving party to
"set forth specific facts showing that there is a genuine issue
for trial").  Moreover, only disputes over facts that might
affect the outcome of the lawsuit under governing law will
preclude the entry of summary judgment.  Anderson, 477 U.S. at
247-48.  If a court determines, "after drawing all inferences in
favor of [the non-moving party], and making all credibility
determinations in his favor — that no reasonable jury could find
for him, summary judgment is appropriate."  Alevras v. Tacopina,
226 Fed. Appx. 222, 227 (3d Cir. 2007).

B.   <u>The Complaint Must Be Dismissed as Against DeFilippo</u>

   As set forth above, it is evident from the Complaint that
the only allegations against DeFilippo concern her alleged
failure to assure that plaintiff received the treatment he
requested for his self-diagnosed GID.  As also addressed above,
all of the claims asserted by Smith concerning the alleged
failure to provide treatment for GID have been dismissed from
this action.  Therefore, in this regard, the Court concludes that
the Complaint must be dismissed as against defendant DeFilippo
for failure to state a claim upon which relief may be granted.

   Smith tries to keep DeFilippo in this case by now alleging
that DeFilippo violated his constitutional right to privacy, one
of the remaining claims against other defendants in this action.
He refers to several documents that purportedly show that
DeFilippo communicated to defendant Ricci and another NJDOC
official her "concerns about conducting mental health interviews
on the main floor of the housing unit due to confidentiality
issues." (Docket entry no. 70 at pg. 2).  However, to the extent
that these documents may be considered, thus converting this
motion for judgment on the pleadings to a motion for summary
judgment, this Court finds that the documents are insufficient to
support any cognizable claim against DeFilippo based on an
alleged violation of his constitutional right to privacy.
Rather, the substance of the communication in the documents, as
alleged by plaintiff, show that DeFilippo did not follow, condone

16

or acquiesce to any alleged policy to deprive Smith of his privacy.  Moreover, as discussed by Judge Wolfson in her Opinion denying Smith's motion for a preliminary injunction, Smith had admitted that the staff doctors and counselors had made efforts to ensure that private session were conducted within plaintiff's unit.

DeFilippo's counsel further points out that the plaintiff's claim against defendant Moshkovich for violating his constitutional right to privacy is based on the factual allegation that Moshkovich interviewed plaintiff concerning his GID at a table outside of plaintiff's cell where such conversation could be easily overheard.  Smith makes no similar factual allegation in this regard against DeFilippo.

Accordingly, the Court finds that the Complaint fails to allege any facts to support any other claim for relief against DeFilippo, in particular, any such claim that DeFilippo deprived plaintiff of his right to privacy.

Indeed, it would appear that Smith's claim against DeFilippo is essentially based on a claim of supervisor liability.  As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at 1948; Monell v. New York City Dept. Of Social Servs., 436 U.S. 658, 691 (1978)(finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); Robertson v. Sichel, 127 U.S. 507, 515-

16 (1888)("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").  In <u>Iqbal</u>, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to <u>Bivens</u>[3] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 129 S.Ct. at 1948.  Thus, each government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in their subordinates conduct.  <u>Id</u>., 129 S.Ct. at 1949.

Under pre- <u>Iqbal</u> Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 127 n. 5 (3d Cir. 2010)(internal quotation marks omitted).  "Particularly after <u>Iqbal</u>, the

---

[3] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)

connection between the supervisor's directions and the
constitutional deprivation must be sufficient to demonstrate a
plausible nexus or affirmative link between the directions and
the specific deprivation of constitutional rights at issue." Id.
at 130.

The Third Circuit has recognized the potential effect that
Iqbal might have in altering the standard for supervisory
liability in a § 1983 suit but, to date, has declined to decide
whether Iqbal requires narrowing of the scope of the test. See
Santiago, 629 F.3d 130 n. 8; Bayer v. Monroe County Children and
Youth Servs., 577 F.3d 186, 190 n. 5 (3d Cir. 2009)(stating in
light of Iqbal, it is uncertain whether proof of personal
knowledge, with nothing more, provides sufficient basis to impose
liability upon supervisory official). Hence, it appears that,
under a supervisory theory of liability, and even in light of
Iqbal, personal involvement by a defendant remains the touchstone
for establishing liability for the violation of a plaintiff's
constitutional right. Williams v. Lackawanna County Prison, 2010
WL 1491132, at *5 (M.D.Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be
asserted; such assertions may be made through allegations of
specific facts showing that a defendant expressly directed the
deprivation of a plaintiff's constitutional rights or created
such policies where the subordinates had no discretion in
applying the policies in a fashion other than the one which

actually produced the alleged deprivation; e.g., supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099, 1117-18 (3d Cir. 1989); see also Iqbal, 129 S.Ct. at 1949-54.

Here, plaintiff provides no facts describing how DeFilippo, in a supervisory capacity, allegedly violated his constitutional rights, i.e., he fails to allege facts to show that this defendant expressly directed the deprivation of his constitutional rights, or that she created policies which left subordinates with no discretion other than to apply them in a fashion which actually produced the alleged deprivation. DeFilippo did not promulgate or direct in any way a policy that served to breach the privacy rights of inmates.  His only factual allegation for this belated claim rests on several communications from DeFilippo to NJDOC officials expressing concern for the conduct of private mental health interviews with inmates, but these communications actually dispute any claim that DeFilippo was involved in, directed, supported or acquiesced in a policy or custom to deprive Smith of his right to privacy.  There also are no allegations that UMDNJ had a policy or custom that caused any alleged violation of Smith's privacy.  For instance, Smith alleges only that two individuals, Dr. Moshkovich and Ms. Baldwin, interviewed him under circumstances that purportedly violated his privacy.  He makes no similar allegations against

Dr. Jordan, Dr. Baum, Dr. Reeves or Dr. Lieberman.[4]  Further, Smith does not allege that DeFilippo ever treated him, or discussed his GID claims with him.

In short, Smith has alleged no facts to support personal involvement by DeFilippo, or to support a claim that DeFilippo issued, directed or acquiesced in any policy or custom that violated Smith's constitutional rights in any way.  Therefore, the Court concludes that there is no cognizable claim asserting supervisor liability, and judgment will be granted in favor of DeFilippo.

### III.  CONCLUSION

Therefore, for the reasons set forth above, the motion by defendant DeFilippo for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), or in the alternative, for summary judgment, pursuant to Fed.R.Civ.P. 56, will be granted, and the Complaint will be dismissed with prejudice, in its entirety, with respect to defendant, Dr. Flora DeFilippo.  An appropriate order follows.


*s/Peter G. Sheridan*
PETER G. SHERIDAN
United States District Judge

Dated:  January 18, 2012

---

[4]  The Court notes that these doctors have been dismissed from this action.